NGONO ANDRE MARIE

REG # 77244-054

D.RAY JAMES CF

P.O BOX 2000

FOLKSTON,GA 31537

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/20/2019

DOCKET # 17-CV-5517 (VEC)



RECEIVED
FEB 15 2019
VALERIE CAPRONI
U.S. DISTRICT JUDGE
S.D.N.Y.

HONORABLE VALERIE CAPRONI

UNITED STATES DISTRICT

COURT SOUTHER DISTRICT

## COVER LETTER

Your Honor,

I am submitting my first amended Complaint on or before february 11,2019 as ordered by the court. In addition to my complaint I have attached the following documents:

- A motion requesting appoitment of a counsel to plaintiff.

- 4 pages administrative remedy responses

- 14 pages medical record from the bureau of prison health serv ices clinical encounters

- 5 pages psychology services reports

*Amu-NGono*

RESPECTFULLY SUBMITTED

NGONO ANDRE MARIE                                      Date: 02-09-2019

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------)
                               )
NGONO ANDRE MARIE              )
          Paintiff            )
                               )
         v.                    )
                               )
UNITED STATES OF AMERICA       )
             Defendant         )
-------------------------------)
```
CIVIL ACTION DOCKET # 17-CV-5517 (VEC)

## COMPLAINT

## I. INTRODUCTION

1. Plaintiff Ngono Andre Marie, I am the plaintiff at the D.RAY JAMES prison in the state of Georgia. I bring this civil action against the UNITED STATES OF AMERICA for the intentional tortious acts of its employees committed aginst me the plaintiff at the Metropolitan Correctional Center of New York.

## II. THE PARTIES

### A. PLAINTIFF

2. NGONO ANDRE MARIE, I am the plaintiff in this civil action . I was detained at the Metropolitan Correctional Center of New york from march7,2016 to august 5,2017 during the proceedings of my criminal case. The incidents underlining this complaint occured at MCC during the period mentioned above.

### B. DEFENDANT

3. THE UNITED OF AMERICA is the defendant in this civil action because THE UNITED STATES had agreed to be sued for certain actions of its employees when acting within the scope of their office or employment.

-1-

## III.  JURISDICTION AND VENUE

4.  The district court has subject matter jurisdiction pursuant to
28 U.S.C.S. §§ 1346(b); 2671-2680 and 1331.

5.  Venue is proper in this court pursuant to  28 U.S.C.S. §1391.

## IV.  NARRATIVE OF THE INCIDENTS

6.  On march7,2017 following my arrest by the F.B.I, I was placed in pret-
trial detention at the MCC in New York pending trial. While in MCC, I was put
in a two men cell with inmate Carl Peter.The first night that I spent with Carl
in the cell, he began to smoke an illegal drug known as k2. that same night, I
told Carl that I was a non-smoker and that I did not want to be intoxicated
with the toxic fumes of k2. On the second night Carl smoked again ignoring my
serious health concerns. In the morning following the second night and while I
was still asleep, Carl brought another inmate in the cell and they began to
smoke k2. At the odor and the smell of K2, Iwoke up and asked Carl and his
friend to go out of the cell to smoke. Carl refused to vacate the with and also
refused to go smoke outside the cell. at his refusal, I went to the correctiona
officer on duty that day and I informed him of the situation of k2 being smoked in
the cell by Carl Peter and his friend. I further asked to the correct officer
to separate me from Carl in order to avoid the escalation of the situation. the
correctional officer asked me to follow him to the cell where Carl and his
friend were smoking k2.

7.  When we arrived at the cell,Carl had already flushed the roll of k2 in
the toilet. Carl and his friend were standing at the cell's door observing the
officer and I as we entered the cell.The odor of k2 was still vivid in the cell
and I asked the officer to smell for himself and he did smell k2 in the air.
I further retreived the equipment used by Carl to light up the k2 rolls in the
cell and showed it to the correctional officer. The equipment consisted of two
small batteries for prison's radios and a razor blade taken from the shaving
razor provided by staffs at the MCC. After the correctional smelled and saw the

the equipment used by Carl to smoke k2 in the cell, he asked Carl and I to fol-
low him in his office.

8. As I tried to follow the officer holding the evidence in my right hand,
Carl grabbed me from behind and asked me to give him the evidence. I told Carl
that the evidence were needed to show that he smoked in the cell, Carl then
takled me on the ground and during my fall I let go of the evidence and Carl's
friend took it and disapeared. while I was on the ground, I called upon the
correctional officer for help as Carl was manhandelling me. The officer simply
looked behind and saw me on the ground but kept on going to his office. he
later activated his body alarm and additional officers arrived at the scene.
Carl and I were taken to the special housing unit where I was charged and
sanctioned by the prison judge (see incident report on record).

9. In the special housing unit(SHU), I was housed with an inmate who also
turn out to be a heavy k2 smoker and he received a large supply of k2 in the
SHU. He smoked every night and for 7 days and nights I was exposed to the
harmful toxic fumes of k2. I could not complain because I had no way to escape
in case the inmate attacked me inside the cell and also because I was to get
additional sanctions had the other inmate attacked me for complaining about
him smoking in the cell. After 7 days, the smoker inmate was released to the
general population. The next inmate that I was paired luckily turned out to
be a non-smoker. I was released from the SHU after 47 days and I was sent to
unit 7 south.

10. After the incident, Carl and his friend told other inmates that I had
informed on them and that I was a"government informant". the news travel very
fast in prison and soon the entire prison population at MCC knew that I had
transgressed the unwritten inmate code of conduct and regulation that makes *it*
a serious crime when an inmate informs on another inmate and provide information
to correctional officer or any other staff member in prison. As a result of my
committing "inmate's own prohibited act", I became inmates's enemy. I was bullied
by other inmates, I was called "snitch","rat","hot","GI" and I received death

threats from other inmates. they bullied me, they harassed me, they all wanted to fight me. Every time I went to the unit team and asked for help , every time I received the same ans wer that if I did not feel safe arround other inmates in the unit, I should check myself in to the SHU for protection. this meant that I was to be kept in SHU for the entire duration of my pretrial proceedings. Because the risk of being exposed to the harmful and toxic fumes of k2 are very high in SHU than in general population units, I decided that I would not check myself into SHU.

11.  Inmates at MCC continued to bully and harass me. my life in MCC became unbearable. I either had to commit suicide to end the ~~bllying~~ <ins>bullying</ins> and harassment or I had to stand up for myself irrespective of the consequences that I was to sufer. I decided to stand up for my self and fight for my life. I reorganized my daily schedules in order to avoid contact with other inmates as much as possible. I decided that I was to watch the news on T.V early in the morning in the gymnasium when it was usually empty.

12.  In the morning of june 30, 2016 I went to the Gym to watch the news and inmate Lamar lawrence was there excersising. I switched the T.V to CNN but inmate Lamar asked me to swicth the T.V back to the previous chanel. I did as Lamar asked me to do and I exited the gym. The following morning, I noticed that gym was completly empty so I wnt in to watch the news. I turned the T.V on to CNN and I began to wacth the news. Few minutes later, Lamar came in and turned the T.V off. I told Lamar that I was watching the news.Inmate Lamar replied and said that the T.V in the gym was run by him and that he did not want me in the gym because I was a "government informant" and a "snitch". inmate Lamar then asked me to vacate the gym. I told Lamar that I was an inmate just like him and that I had every right to be in the gym and watch T.v as much as he did. I then went to turn the T.V back on and as soon as I turned the T.V on, inmate Lamar attacked and punched me two times on my face  then pushed me on the gym's wall. I landed on the wall with my back, then I saw inmate Lamar advancing toward me with closedhand fist to punched me again. Because I had no way to escape,I decided to fight back and so I did. As I was fighting back in the gym, the correctional officer on duty acti- vated his body alarm and additional officers arrived at the gym. Lamar and I were both taken to the special housing unit where I was charged and sanctioned by the prison judge (see inc ident report, also see DHO report on record).

The MCC prison SHU's policy dictates that inmates while in SHU are only allowed three showers per week. One day, I was scheduled for the shower and when the shower officer came to take me to the shower room, I was on the toilet stool and so the officer waited for me to finish with the toilet. Once I was done with the toilet I washed my hands and signaled to the officer that I was ready for the shower. The officer opened the small slot on the cell door and I inserted my hands to be handcuffed. the officer asked me to wash my hands and I told the officer that I had already washed my hands. the officer said that I should wash my hands for the second times because there were germs on my hands and that he did not want to touch such germs. I felt humiliated and I told the officer that there were no germs on me as he presented it. I then suggested to the officer that he could wear latex gloves if he did not want to touch me with his bare hands. at my suggestion, the officer became angry and stated that I was refusing to be taken to the shower room. I told the officer that I was not refusing to be taken to the shower room and that it was him the officer who was refusing to take me to the shower room.

13.    The shower officer closed the slot and went on to take other inmates to the shower room. Once he was done with the other inmate the shower officer and the officer in charge (OIC) Scott came to my door . Scott asked me if I refused to take a shower and I told Scott that I did not refuse to take a shower. Scott then asked me if I wanted to take a shower and I told Scott that I wanted to take a shower. Scott then opened the door slot and I inserted my hands to be handcuffed. Once I was handcuffed OIC Scott opened the door and took me out of the cell. It is only then that Scott informed me that the shower officer had complained to him that I was disrespectful to him the shower officer and Scott stated that he was about to teach me a lesson because no inmate can direspect his officer when he is the OIC. Scott then walked me onto the common area of the special housing

-5-

unitand toward the exit door. I asked Scott where he was taking me  and
he only asked me to keep walking. I stoped walking and asked again where
he was taking me. at that point Scott lifted me up and off the ground and
took me to a room in the special housing unit known as guantanamo box or
simply G-box.

14. The G-box was so named because it is a  room where no camera was
instaled that can capture whatever happen behind the closed door of that
room and this is the room where rogue officer torture inmates  with no
worry about a video recording of their wrongful acts. Once Scott took me
inside the G-box, he slamed me on the concrete floor and I sustained inj
uries on my knees and ankles(see medical record in MCC custody). When Scott
slamed me on the floor, he asked the shower officer to hold me down while
he retreived a belt. scott whipped me with the belt. he hit me multiples times
with hard hits and I sustained bruises and swollen on my back,feet and
arms.When Scott stoped hitting me, he called additional officer and ordered
them to hold me down in order to make it appeared that he himself did not
touch me. Scott then called the lieutenant and a camera lady to record the
part that scott wanted her to record. During the ordeal I sufered excrux
iating pain and emotional distress.

15.  The Lieutenant took me back to the cell and Scott did not allow me
to take a shower after that. He further instructed his officer not to give
me a shower during my entire stay in the special housing unit. I complained
to the warden about the situation and he simply walked away without answ
ering or giving any response to my concerns. while in the SHU Scott cont
inued to discriminate against me because I was from Africa, and he stated that
he treated me the way he was treating me because that is how police officers
in africa treat people like me. Scott bragged to the other inmates that he
whupped my ass and that he was born in a project in brooklyn and that there
was nothing an inmate can do to him .

Scott also called me a "motherfucker" in multiple occasions. scott further instructed his officers never to give me the basics hygene items such as toothpaste, toothbrush, soap, shaving razor and so no officer provided me with the basics items.

16.   sometime while in SHU I heard officer telling other inmates to clean their cell because the inspectors were coming. So I wrote on the wall facing the door so that the inspectors can read about my situation. I wrote on the wall and it read: Officers please do the job you are paid to do and do me no favors because I hate favors. The inspectors came and saw my writting. the warden also saw my writting and he even asked Scott if I was the one who wrote on the wall because the warden did not believe that I can write in english. I wrote the statement on the wall to inform the inspectors that I was not being provided with the basics in the SHU. I also wrote the statement because an officer told me that any thing they give me in the SHU was simply a favor that they were doing to me.I disagreed.

17.   After the warden and the inspectors read my wall's statement and left the SHU, Scott became angry . scott came to my door and opened the slot on the door and asked me to cuff up so that he can take me to G-box again and whupped my ass as he himself stated. I refused to insert my hands through the slot. scott stated that I deserved to be whipped in G-box because I accused him and his officers to their supperiors that they were not doing their job. I refused to

18.   Scott told me that he would not give me food  untill I accept taking a trip to G-box.Irefused to go to G-box and Scott did not feed me that day. the next day when the food officer refused to give me food,I wrote on a pie-ce of paper and it read:if you cannot feed me, then you cannot see me. I then placed the note on the see through glass on the door. when scott saw the

the note on the door , he opened the slot and asked me to insert my hands so that he can handcuff me. I refused to be handcuffed because he wanted to take me to G-box. At that time scott told me that he was going to take me to G-box by all means and that he was going to call the Lieutenant on duty to open the door so that he can take me to G-box by force.

19.   After that, scott closed the slot and left. Few minutes later,scott sent Lieutenant Gonzalez as he had told me. Lt Gonzalez came to my cell , then he opened the slot and asked me to insert my hands for him to handcff me.I told Lt Gonzalez that I would not cuff up because scott wanted to take me to G-box to hit me with the belt.I also informed Lt gonzalez that Ihad not been fed for two days.Lt Gonzalez replied and said that I was not fed because I accused the officers to the warden and the inspectors.


19.   Once Lt Gonzalez took the side of Scott, I requested to Gonzalez that I wanted to speak to the Captain so that he can address my concerns. Gonzalez told me that it was him lieutenant Gonzalez who was in charge of the special housing unit and not the Captain.Gonzalez said that he would not call the Captain and then he said that he was giving a direct order to cuff up.I told Gonzalez that I would never voluntarly agreed to be handcuffed so that scott can hit me with the belt in G-box. Lt Gonzalez said to me that he would remove me from the cell and turn me over to scott whether I agree or not. I told Lt that I would never agree. Lt then asked me if I was hundred percent sure that i did not want to cuff up and I responded in the affirmative.Lt Gonzalez then closed the slot and left. Once Gonzalez left I began to clean my cell because MCC prison is infested with rats and roaches to the point that a single day without cleaning the cell attracts a herd of mice and roaches.I splashed water on the floor and I began mopping the floor. While I was mopping the floor, a lady came to the door and stated that she was the prison's psychologist and tha she wanted to speak to me, so I stop mopping the floor. The lady then asked me why I had refused a direct order from Lieutenant Gonzalez and Scott.I explained

to the psychologist that Lieutenant Gonzalez and Scott wanted to take me to the G-box and that Scott in particular wanted to whip me with a belt. I also told the psychologist that I had not been fed for two days and that I was very hungry. I then asked her if there was a way she could get me food to eat. She told me that only the food officer could make that call and that she was not involved in the feeding operations. Next I asked the psychologist if she could call the Captain for me but she ignored my concerns and stated that I should just follow the direct orders given to me by Lt Gonzalez and scott. she further told me that she was only there to difuse the situation and avoid any confrontation. I explained to the lady that I was not confrotational and that I was only asking for food and basic hygene items and that there was nothing confrontational about me asking for those basics things. the psy chologist said to me that I should just follow and obey the direct orders and submit mysel f to be handcuffed. At that moment , I felt like the psychologist sounded more like a corr ectional officer than a psychologist. I realized that she was in fact a correctional office r. I asked her about the type of psychology she was practicing because I could no believe that a normal psychologist would tell a person to voluntarily submit to a beating or corpor al punishments. she told me the type of psychology she was practicing and her type of psych ology had nothing to do with humanity. I then told her that skinner's type of psychology was better because skinner fed his subjects very well before giving them a task. When she heard the name skinner, she asked me if I wanted to hurt myself. I was not sure what connection was there between skinner and me wanting to hurt myself. nevertheless I told her that I did not want to hurt myself. Next she asked me if I wanted to hurt someone else and I again told her that i did not want to hurt someone else. The psychologist lady then asked me why I was being difficult. I told her that I was not being difficult to her. I also told her that I did not trust Scott because he once took me out of the cell by acting as if there was no pr oblems and once I voluntarily submitted to handcuffs, scott carried me by force to the G-box where he whipped me with a belt and inflicted me injuries. I further told the psychologist that I felt safe inside the cell because there were cameras inside the cell and on the hall way that can capture scott action incase he hit me with the belt again. I then excused mys elf and I told the psychologist lady that I was in the process of cleaning my cell when she came and that I had already splashed water on the floor in order to mopand that the floor was completly wet. The psychologist left after I excused myself to mop the cell.

20. I was on the ground inside the cell mopping the floor when I heard people speaking

near the door. i pay no attention and continued to mop the cell. Few minutes later, the

y stoped talking and then I heard the noise from prison guards keys opening the slot.

I turned to look if a tray of food was being inserted in the slot opening for me to for

me to eat. instead ,Isaw guards through the opening dressed in combat uniforms. they

wore cosmonautes like jumper suits with astronautes helmets on their heads, moon walk

type of boots on their feets and heavy duty steel workers gloves on their hands.At that

time, one guard inserted his hand through the slot opening. he was holding a canister

toped with a cone shaped object.The guard then activated the canister and balls of oran

gegase exploded out of the cone shaped object on to my body.It is only then that I real

ized that I was being bombarded with a dangerous chemical weapon. the guard fired the

chemical weapon directly on my face at a very close range of less than one foot. under

panic, exteme fear of dying, and under extreme emotional distress, and under the painfu

l effects of the corrosive toxic gases, I lost conciuosness and fell flat on the wet fl

oor that I was mopping. The corrosive and toxic gases penetrated my eyes, nose, ears an

d mouth causing redness and slwollen on the my sense organs. the toxic gases caused my

eyes to teared excessively. the harmful and toxic gases has caused me an extreme physi

ologic disruption and mal-function. a big dark that spot is now growing on my right eyes cau

sing me accute blindness in my right eye and a chronic blindness of my left eye. my bra

in funtion has diminished due in part due to the corrosive effect of the toxic gases fi

red at me by a correctional officer at MCC.I was on the floor unconcious when the explo

sion of the chemical weapon ratled in the cell and i regained conciousness. I got up an

d grabbed something on the bed and placed it on the slot opening to prevent more balls

of gases from coming inside the cell.


21. As I placed the object on the slot's opening and turned arround to relieve the

burning and pain with water in the sink, another correctional officer forcefully thrust

ed a long steel bar through the slot opening and hit me with the steel bar on the back

of my left leg. the steel bar tore my flesh and opened a big wound on the back of my le

g. at the hard hit, I fell again on the floor and lost conciousness. As I was laying on

the floor unconcious, another correctional officer shot me multiple times with a rubber

rubber bulets from a shot gun.on the painful impacts of the bulets on my body combined
with the explosive noise from the gun,I regained conciousness and stood up.correctional
continued to fire at me.The bulets puntured my body in various parts and created open
wounds.I moved away from the door and I sat on the bed in pain and in fear of dying.
When I sat on the bed, I saw my blood on the floor and it is only then that I remembere
d that I was heavily bleeding from the wounds. I pressed my hands on the most bleeding
wounds to slow down the rate that I was loosing blood.


21.  As I was sitting on the bed pressing my hands on my leg's wound, Lt Gonzalez op
ened the cell door and ordered correctional officers to enter the cell and attack me.the
officer who entered had a big trnsparant sword shield for batle fields. Three other off
icers followed behind him and last was Gonzalez.once inside the cell, the officer holdi
ng the batle shield hit me on my neck with the big transparant glass batle field shield
and I fell on the floor. He hit me again on lower back with the shield and I screamed.
In an attempt to avoid being repeatedly hit with the shield, I dragged myself under the
small metallic desk in the cell. when I hid under the small desk, correctional officer
Saint John grabbed me by both of my feet and tried to dragged me out from under the sma
ll desk.I held tied onto the desk's foot and prevented Saint John from dragging me out.
Correctional officer Saint John became frustrated at his failure to drag me out of the
small.At that time, Saint John inserted his hand under my boxer and grabbed me by my te
      Desk
sticles and my penis and squeezed both my testicles and my penis so hard that he injured
both of my testicles and more so my right one.I should note here that when the officers
entered my cell,I was only wearing my underwear beause it was a hot summer day and the
air conditioner was out of service.


22.   Under the extreme pain of my testicles being craked, I let go of the small desk
foot and Saint John dragged me out from under the desk. another officer place his foot
on my back and began to press me down.Saint John and another officer shakled my feet wh
ile two other officer handcuffed my hands behind my back.Because I was unable to walk
at all,the two correctional officers handcuffing me

10

due to the back,neck,leg and all other injuries intentionally inflicted to me by the officers. Lieutenant Gonzalez then ordered the four officers to carry me up stairs within the special housing unit.when carrying me, the officers intentionally pulled on the chaing attached to the shakles and caused friction of the shakles with my feet.since the leg shakles are indented, the dents dug into my feet and injured me along both frontal tibias.The friction also caused me multiple wounds on both ankles while the handcuffs frictions caused wounds on both of my wrists.

23. once we arrived up stairs, I was droped on the floor in the hallway. Lieutenant Gonzalez then ordered the officers to seal the drainage holes on the shower floor so that no water can drained. next Gonzalez ordered the officers to turn the shower water on to maximum cold and let it run for a while.while I was laying on the hallway.
Gonzalez orders were promptly executed by the officers. the guards sealed the shower drainage on the floor with latex gloves and then opened the water to maximum cold as ordered by Gonzalez. once enough water ran onto the shower floor and created a small pond big enough,Gonzalez ordered the officers to water board me in the ice cold water inside the shower room.the officers water boarded me by deeping my head inside the pudle of water and holding my head down in the water untill air buble out of the water as I struggled for breathing.Then they would lift my head out of the water and immediately deep my head again, they repeated the same act multiple time untill I pass out and I became unconcious and unresponsive. C.P.R was performed on me and when I regained conciousness I saw one one officer bent over me with his hands on my chest performing C.P.R. I started breathing again, once I opened my eyes the officer told Gonzalez that I was breathing. Lieutenant Gonzalez then ordered the four officers to take me further up stair in a secluded small medical room near the SHU ADMAX.

24. Inside the small medical room, Iwas tied up on a table with big links chain in addition to the handcuffs and shakles on my feet and hands.The Physician assistant Chito Evangelistat was there when I was being tied up with big chain on the table.As one offi
cer twisted the injures arm,my restles until I had previously suffred in the accident the hard hit, I crded loud and I told the corrpt Gonzalez that he would be

cer tied me up, officer Saint John hit me with closed hand fist on my testicles and aggra

vated the testicular injuries that he had previously inflicted t me when he squeezeed and

craked my testicles in the cell.At the hard hit on my testicles, I cried and screamed out

loud and I told Lieutenant Gonzalez that he would be responsible for letting Saint John

molest me in front of him.I further told Gonzalez that there was a camera in the medical

room that had captured the Saint John act and that there were other cameras all over the

the special housing unit that also captured the entire incident. Gonzalez replied and said

that I would not get the video recordings of the incident because I was an alien with no

rights in America. Gonzalez said that I would be deported before I could evem ask for the

cameras video recordings and that if I did ask for the recordings, they would not be

provided to me. Gonzalez also made xenophobic comments about my national origin when he

stated that stated that I was from Africa where people run naked among other wild

animals.


25.   After physician assistant Chito Evengelista concluded his made believe wound

evaluation,he told Gonzalez that he was done with me. Chito Evengelista refused to examine

my back,my neck and my testicles injuries despite me telling Chito I felt severe pain in

those body parts.furthermore, Chito Evangelista refused to give me pain killer to

alleviate my pain and suffering, despite the fact that I requested pain medication to

Chito.I was in extreme pain due to the combine effects of all wounds and all traumas I

suffered during the assaults.PA Chito Evengelista specifically told me that he would not

discuss at treatment plan for my back,neck and testicles injuries injuries. Chito further

stated that he would not start a treatment for my testicles,back and neck injuries

because he only had two weeks left before retires from his job at MCC. Chito Evengelista

was deliberately indifferent to my serious medical needs .


26.   After Chito was done, Gonzalez ordered the four officers to carry me back to the

cell. So I was carried back to the cell with no pain killer provided to me. I was in

extreme pain.  In the way back to the cell,the officers carrying me from the front

intentionally droped me on the concrete floor.Because my hands were tied behind my back

with hand cuffs,I had no way of breaking the fall and so I landed on my face and I

sustained two lit our young on my face 14 i suffer of nasal narration in addition to

sustained head injuries. I sustained two big open wounds on my face,a brain concussion, swollen on the outside and swollen in the inside of my head. I also sustained multiple bru ises,abraisions,lesions and scractches on my torso,neck,back,legs,arms,and toes(see medic al record in BOP's file).After the intentional drop, the officers lifted me again and car ried me to the cell where I was left in extreme physical and emotional distress.I called  Gonzalez and the guards to at least get me pain killer medicine but they ignored my call and paid no attention to me.

27.   Minutes after I was locked in the cell, the nurse came to the cell's door to gi ve me the bandages to cover my wounds. once she saw the severity of the wounds on me she immediately returned to Chito the PA and pleaded with him to prescribe me appropriate tre atment for my wounds.She requested that stiches be applied to most of my wounds but Chito refused to applied stitches and decided that only the most flagrant wounds that were on my face were to be glued and all other wounds were ignored.The nurse did as order by the PA,in addition she deligently inspected my body and desinfected all wounds that chito did not even mention in the medical report. The nurse displayed symphaty and was the only one who was morally shocked by the severirty and number of the wounds that were inflicted to me by other prison employees.She later gave me few bandages for self care and I now under stand that she had already predicted that no further medical of my wounds was to be provi ded to me while I was in SHU under Gonzalez and Chito authority. I was cover with wounds to the extent that the bandages that the nurse gave me were not enough to cover all the wounds.After the nurse intervention, I did not see her thereafter and my wounds were not cared for for the rest of my stay in SHU of more that two months.
Chito provided me with no follow up,no wound care,no presciption for the injuries. being left without medical care,my wounds began to form pus inside and smelled very bad to the point that the bad wounds'smell attracted a herd of mice and roaches in the cell that fur ther made me sick.

28.   For more than two months I was bed ridden and unable to stand without the supp ort of the bed's foot or the sink in the cell.I was kept in the SHU for 89 days well beyond

the 30 days or so ordered by the DHO or the administrative judge.Every day I complained a
bout the wounds,pain, back pain, neck pain and testicles pain and nothing was done beause
Scott refused to even transmit my complain to the appropriate department.


29. After the attack, Assistant Warden Jane Doe gave firm instructions that no employ
ees was to give me a pen,pencil or paper.OIC Scott placed a note onmy cell door that inst
ructed any staff not to give me pen,pencil or paper as per AW's order.Furthermore, a group
of officers came to my cell to intimidate me and placed a yellow rubber band under the ce
ll door in order to seal the small opening under the door so that no pen,paper or pencil
could be thrown into the cell by other inmates in the SHU.AW Jane Doe effectively prevent
ed me from getting access to whitting material and so effectively prevented me from timely
filing the administrative remedy with the appeal board of the North East region located in

phyladelphia,Pensylvania.She also prevented me from communicating with the outside world
as I was to contact the district court judge of criminal case and inform him of the wounds
inflicted to me by prison employees.Once my my own immune system healed my external wounds
and Gonzalez verified that the video recordings preinstaled throughout the facility have
purged the recordings on the preset normal automated schedule,it is only then that I was
released from SHU.


30. Once in general population unit,I realized that the unit team there was also ins
tructed not to give me administrative remedy forms. for many times I tried to get the form
from miss black but she refused. After month of trying on my own and failed, I paid another
inmate to get the forms and soI completed my administrative remedy for my bivens action
and I submitted tort claim forms,one was answered and the other one has been pending for
more than 6 months which gives me the right to initiate the civil action as precribed by
the tort claim act provisions.I originally intended to pursuit two actions against the fe
deral employees who tortured me and inflicted me injuries.I originally intended to hold th
United States responsible for the barbaric acts of its employees only for 10% of the claim

-15-

and I intended to hold the employees resposible for their own acts for 90% of the claims. However, after carefully reviewing the Supreme Court decision in Ziglar v. Abassi where the Supreme Court clearly stated that the only remedy that congress explicitly prescribed to compensate plaintiffs injured by federal employees acting within the scope of their of fice or employment falls under the Federal Tort Clam Act and not under the Bivens action. Therefore, I have decided not to pursuit my Bivens claims which is consistent with the Su preme Court decision.As such, the United States is the only proper defendant. the United States alone is responsible for 100% of the compensatory money damages presented to the Federal Bureau Of Prision the agency under which these claims arose.

## V.  THE INJURIES

### C.  PHYSICAL INJURIES.

31.    Paragraph 1 through 30 above are incorporated as if fully set forth herein.

32.    From the attack orchestrated by OIC Scott and carried by Lieutenant Gonzalez and four correctional officers, I sustained multiple internal injuries and external physical injuries.The injuries listed below are not exhaustive and doctors may diagnose many more injuries during future evaluations,consultations or examinations once I am released from prison because I have lost confidence to doctors in prison and I can only trust these dot ors just as an inmate convicted to death may trust the doctor who will inject the lethal drug.I have lost trust to prison medical professional after witnessing what PA Chito Even gelista did to me.

33.  On my head, I sustained serious chemical burns on my scalp,face,right and left eye,nose, both right and left ears, both lips. I also sustained swollen, bruise,scratches and abrasions on my head.in addition, I sustained two big open wounds on my face,redness, one open wound on my scalp. I suffered loosening of front teeth,I suffered brain swollen and brain concussion. As a direct resul of my head injuries and the head chemical burns,I sustained permenant face disconfiguration with two big ugly scars with unpleasent face marks. I also suffered permenat skin loss, lost of blood vessels,nerves and lymphatic vessels. I also suffered permenant damage of head skin,permenant damage on eyes with blurred visio n,progressive blindness on both eyes, excessive dryness of both eyes,excessive tearing when

bombarded with chemical weapon in boths eyes,extreme and painful pressure on both eyes,pe rmenant deposit of toxic gas on both eyes creating dark spots and also caused chronic and accute vision problems, scars tissues in both eyes,ears, nose and mouth. Furthermore I su ffered frontal and top scalp hematoma,facial bone fracture. Moreover, I suffered cerebral concussion that caused me to loose conciousness and left me unresponsive for many times during the attack.I now suffer accute skeletal muscles,bones and joints that is unrespons ive to the current prescribed medications from prison. Once I am released from prison I will undergo plastic,elective, and reparatory sugeries.

34.     On my neck, I sustained serious injuries when I was hit with the sword shield and when I was intentionally dropped on the ground as well as during the entire assault.As a result,I sutained neck injuries that include dislocation and derangement of cervical discs on my neck, herniation of cervical discs,bruises,lesion,abrasion scratches on my neck. I suffered permenant restriction of neck movements, air pressure build up on the top of my neck. all these on my neck are causing me extreme pain and suffering and require neck sur sery once I am released from prison.

35.     On my shoulders, I sustained one big open wound on left shoulder, strain and sprain on both of my shoulders,scars and permenant unpleasent marks , swollen,bruises,scr atches,abrasion on both shoulders.As a direct result of these shoulders'injuries I strugg le with severe should*er* pain and suffering.

36.    On my arms, I sustained  strain and spain on both arms chemical burns,bruises,s wollen,scratches, abrasions,lesions on both arms.I suffered dislocation of both wr*s*sts of my arms,various open wounds due to hand cuffs frictions on both arms,I sustained onpen wo und on major and index fingers left arm.permenant damage to my two left fi*n*ger with severe restriction of movement on those fingers,permena*n*t lost of skin,blood vessels,nerve vessels on both fingers. these injuries on my arms caused me etreme pain and suffering.

37.     On my back I sustained serious back injuries with vertebral discs dislocation, derangement,herniation,pressure build up,strain and sprain,spinal injuries. I also suffered chemical burn on my back skin,in addition to bruises,abrasion,lesions,swollen,stcratches, and skin irritation.the assault has traumatized my back *muscles* mucles causing permemant back mus cles damage. These back injuries caused me permenant debilitating back pain and back suff ering. I will undergo back surgery once I am released from prison.

38  On my feet I sustained a big open wound on the back of my left leg.I sustained 10 other open wounds on my left leg and 6 open wounds on my right leg.I suffered serious injuries on both of ankles with a dislocation,derangement of my right ankle.In additon, I suffered chemical burns, strain and sprain on both of my foot.I sustained injuries on my toes,ankles,knees hips for both foot. moreover I sustained lacerations,lesions,bruise,scr atches, swollen tenderness on both foot. These feet injuries require different surgeries including ankles,knees and hips surgeries. I also suffered hematoma in bot both foot.I wil l perform orthopedic,elective,reparative and plastic surgeries on my feet once I am released from prison.

39.    On my genital I sustained severe internal testicular wounds on both testicles.I also suffered chemical burns on both of my testicles and on my penis in addition to scrat ches,swollen,abraisions,lesions and bruises.

**D. PHYSIOLOGICAL INJURIES.**

40.    Paragraphs 31 through 39 above are incorporated as if fully set forth herein.

41.    During and after the attack by Federal employees at MCC,I sustained a myriad of physiological issues in my body that were not there before the vicious attack.Among other issues,I developed allergy to certain fruit and vegetable including allergy to water melon, orange,tangerine,pine aple and romane letuce. these allergies are a direct result of being exposed to toxic gas when I was bombarded with harmful and toxic chemical.In addition, I suffered serious skin burn leading to skin pH imbalance with permenant hot flashes as if in menaupose.I also developed permenant tingling on my finger and toes with extreme burni ng sensation. I also feel permenant burning sensation under my feet and under arms.I have developed nerves pain including sciatica,branchial,dorsals and pedals nerves pain.I now suffer accute and chronic headache,blood pressure,constant nauseas and vomits.I struggle with the inability to focus on simple task like never before the attack. I batle scary and frightening nightmares every night due to the attack where I dream of correctional officers breaking into my cell and torture me to death.I have also developed a drop and panic attack and anxiety as well as other phobias.

**C. PSYCHOLOGICAL INJURIES.**

42. Paragraph 40. through 41 above are incorporated as if fully set forth herein.

43. In the attack I suffered extreme permanent and debilitating mental,emotional and psy chological injuries. the injuries listed below are not exhaustive and the psychologist may diagnose me with many more other injuries caused by the attack at mcc.From the atta ck, I suffered extreme shock and extreme fright, permanent feeling of helplessness,and hoplessness. from the attack I developed severe fear of correctional officer, severe fe ar of correctional medical personnel, severe fear of prison psychologist. in addition, I sustained mental injuries and illness causing severe diminishion of my mental capacity I also experiñce chronic sadness, depression, anxiety, phobias, and I also suffer severe and extreme mental and spychological distress in addition to the extreme mental illness. Futhermore, I have, I am, and I will suffer extreme emotional distress and extreme psyc hological pain and suffering due the attack, assaults by federal employees.These psycho cological, mental and emotional injuries are and will require long term treatment by ce rtified psychologits to help me cope with these myriade of mental illnesses.

## VI.  LEGAL BASIS FOR THE CLAIMS

44.Paragraph 1 through 43 above are incorporate as if fully set forthia. *herein*. *herein*

45.Claims in group 1 through 10 are actionable under the FEDERAL TORT CLAIM ACT which provides in relevant part of section 1346(b) that:

Subject to the provisions of chapter 171 of this title (28 USCS §§ 2671 et seq.), the district courts together with the United States District court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive  juri sdiction of civil actions on claims against the United States, for money damages, accru ing on and after january 1, 1945, for injury or loss of property, or personal injury, or death caused by the negligent or wrongful act or omission of any employees of the Gover nment while acting within the scope of his office or employment,under circumstances whe re the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occured.

(2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an ag ency, officer,or employee of the Government, for mental or emotional injury suffered wh

while in custody without a prior showing of physical injury or commission of sexual act (as defined in section 2246 of title 18).

Other relevant part of the FTCA are codified in section 2671-2680 of title 28.

As precibed by the FTCA,the Claims under group 1 through 10 are recognisable and action able under New Yort State Tort laws.


## VII.  CLAIMS FOR RELIEF

46.    Paragraph 44 through 45 above are incorporated as if fully set forth herein.

47.    Claims for relief below are grouped in category of claim with similar or close issues or counts


F.    GROUP 1 CLAIMS

- count 1: Assault and Battery

-Count 2: Excessive use of force

- Count 3:Intentional, malicious, and wanton infliction of injuries.


48.    Federal and New york State laws prohibit assault and battery on another person, federal and state laws also prohibit the use of excessive force by law enforcement pers onnel against the people that they are expected to protect by law. furthermore,Federal and state laws prohibit the intentional, malicious, and wanton infliction of pain and injuries for the very porpuse to cause harm to another person. On august 18, 2016, Lieu tenant Gonzalez and four correctional officers  at the MCC prison assaulted,they battered me,they used excessive force against me, they intentionally,maliciously and wantonly in flicted me severe and serious physical, mental,emotional and pshychological injuries.


49.    I was in a solitary confinment cell serving my disciplinary sanctions time ordered by the prison judge. While in solitary confinment, Lieutenant Gonzalez and four correction al officers entered my cell and commited the wrongful acts mentioned under group 1 claims, consisting of count 1 through 3. Lieutenant Gonzalez and the four correctional officers

were acting in their official capacities when they assaulted,battered and intentionally in
flicted me severe mental,physical and psychological injuries.


50.  Lieutenant Gonzalez and four correctional officers violated the laws that prohibit
assault,battery and the intentional use of excessive force to maliciously and wantonly in
flict injuries to another person.by violating the law,Lt Gonzalez and four correctional of
ficers have, under color of Federal and New york state statutes,regulations,ordinances,cus
toms or usage,deprived me the plaintiff of rights secured and guaranteed me by law,thus en
titling me the plaintiff to remedy.
G. GROUP 2 CLAIMS.
- Count 4: Sexual assault
- Count 5: Abusive sexual contact
- Count 6: Aggravated sexual assault
- Count 7: Cover up and filing of false and ficticious report about a sexual assault


51.  Federal and New York state laws prohibit sexual assault, abusive sexual contact,agg
ravated sexual assault and the cover up and filing false and ficticious report about a se
xual assault.On august 18,2016, I became a victim of a sexual assault and of all the acts
listed under group 2 claims.These prohibited sexual acts were committed by correctional of
ficer Saint John and Lt Gonzalez. Saint John sexually molested me when he initiated an ab
usive sexual contact with my genital.He committed an aggravated sexual assault when he sq
ueezed and wounded my testicles.Lieutenant Gonzalez aided and abeited Saint John to sexua
lly molest me.He also covered up and filed a false and ficticious report about the assaults
Gonzalez also misslead the other investigator attempt to discover the facts causing them
to falsly conclude that the sexual assault was unsubstanciated(see PREA report on record
in BOP file).Officer Saint John and Lieutenant Gonzalez were acting in their official cap
acities when I was sexually molested by Saint John.


52.   Correctional officer Saint John and Lieutenant Gonzalez violated the law that

prohibit sexual violence. By violating the laws prohibiting sexual violence, Lieutenant Gonzalez and correctional officer Saint John have, under color of Federal and New York State statutes,regulations,ordinances,customs and usage, deprived me the plaintiff of rights secured and guranteed me by law thus, entitling me the plaintiff to remedy.

## H. GROUP 3: CLAIMS

--Count 8:|. Deliberate indifference to serious medical needs.

- Count 9: Medical malpractice.

- Count 10: Medical negligence.

53. Federal and New york state laws prohibit the deliberate indifference to ser ious medical needs of a patient,medical malpractice and negligence. On august 18, 2016, after I was seriouly and severely injured by correctional officers, I was taken to a medical room where Physician Assistant Chito Evengelista was deliberatly indifferent to my serious my serious medical needs when he refused to examinine and treat the injuries on my genial, back and on my neck.Chito Evangelista refused to give me pain killer despite the apparent fact that I was in extreme pain and suffering and I personally asked for pain killer med icines.Furthermore, Physician Assistant Chito Evengelista refused to write a report about the sexual assault despite the fact that I informed Chito Evengelista that I was being sexually molested by Saint John. In addition, Physician Assistant Chito Evangelista was negligent when he failed to follow up those injuries that he had access after the attack. the failure to follow up caused my injuries to rut and smell very bad and attracted roa ches and mice that further made me sick in the cell.Moreover, PA Chito Evangelista committed medical malpractice by failing to follow the New York State professional standard of care to be provide to patients.

54. PA Chito Evengelista was acting in his official capacity when he committed the wrongful acts listed under group 3 claims. PA Chito Evangelista violated the law by com mitting these wrongful acts. By violating the law, Chito Evangelista has, under color

of Fedral and New York State statutes,regulations,ordinances,or usage, deprived me the plaintiff of rights secured and guaranteed me by law thus entitling me the plaintif the to remedy.

I. GROUP 4 CLAIMS

- Count 11 Breach of duty owned to plaintiff.
- Count 12 Breach of trust and failure to protect.

55. New York State and Federal laws imposed a duty to prison employees to care for inmates under the government custody. state and federal laws also required correctional officer to maintain the trust put in them and protect all inmates while they are incar erated. During my detention at the MCC, the MCC staffs breached the duty to care and procted me. the staff at MCC also failed to live up to the trust put in them as Public servants.The warden E. Tatum, Assistant Warden Jane Doe, Lieutenant Gonzalez, OIC Scott and four correctional officers were acting in their official capacities when they commi tted the wrongful acts mentioned under Group 4 Claims. the above employees violated the the law by breaching a duty owned to me,by failing to protect me and by breaching the the Trust put in them by the public.

56. By violating the law, the Warden E. Tatum and his employees at The MCC have,under color of federal and New york state statutes, regulations,ordinaces,customs or usage, deprived me the plaintiff of rights secured and guaranteed me by law thus entitling me the plaintiff to remedy.

J. GROUP 5 CLAIMS

- Count 13: Use of dangerous and deadly weapons to cause harm.
- Count 14: Use of ice cold water to cause harm.
- Count 15: Attempt murder.

57.  New york state and federal laws prohibit the use of deadly and dangerous weapons and the use of ice cold water to cause harm to another person. In addition federal and state laws prohibit the wrongful act of attempt murder. On august 18, 2016, Lieutennt Gonzalez and four correctional officers used a fire arm, a steel bar and a chemical weapon to cause me severe and serious harms, they further used ice cold water to water board me in a shower room. in the cours of causing me harm, these employees attempted to murder me. Lieutenat Gonzalez and the four correctional officer were acting in their official capacities when they committed the wrongful acts listed under group 5 claims.

58. Lieutenant Gonzalez and the four officers violated the laws prohibiting the wrongful act listed above. By violating the law, Lieutenant Gonzalez and the four correctional officers have, under color of federal and new york state statutes, regulations, ordinances, customs or usage, deprived me the plaintiff of rights secured and guaranteed me by law thus entitling me the plaintiff to remedy.

K.  GROUP 6 CLAIMS

- Count 16: Abuse of process.
- Count 17: Abuse of authority

59.  Federal and New york state laws prohibit the abuse of process and the abusive use of authority. From march 7, 2016 to august 5, 2017, the warden, assistant warden, OIC Scott, Lieutenant Gonzalez, unit team in 7 south unit and five, four correctional officers the psychologist Jane Doe and physician assistant Chito Evengelista abused the process and authority to cause harm and inflict me injuries. The employees mentioned here were acting in their official capacities when they abuse the process and authority.

60. These Federal employees violated the law by committing the wrongful acts listed under group 6 claims. By violating the law, these employees have, under color of federal and New york statutes, regulations, ordinances, customs or usage, deprived me the plaintiff of rights secured and guranteed me by law thus entitling me the plaitiff to remedy.

L. GROUP 7 CLAIMS

- Count 18: Retaliation
- Count 19: Discrimination

61. Federal and New York state laws prohibit retaliation and discrimination again st another person.From the time OIC Scott decided to take me to G-box because I accused him and his officers to the warden,to the time that I was assaulted by Lieutenant Gonza lez and four correctional officers,I suffered retaliation. I further suffered discrimi nation based on my national origin when Scott and Gonzalez treated me bad simply becau se I am from africa were people run naked among other wild animals as stated by Gonzalez. Scott,Gonzalez and Assistant warden retaliated against me, while scott and Gonzalez disc riminated against me based on my national origin.Gonzalez and ~~were~~ Scott were acting in their official capacities when the/committed the wrongful acts listed under group 7 cla ims. Gonzalez,Scott,AW Jand Doe violated the laws prohibiting discrimination and retal iation.

62. By violating the law Gonzalez,Scott and Jane Doe have,under color of federal and New york state statutes,regualations,ordinaces,customs or usage, deprived me the plaint iff of rights secured and guaranteed me by law thus entitling me the plaintiff <sup>To</sup> ǫf remedy.


M. GROUP 8 CLAIMS

- Count 20 conspiracy to interfere with civil rights.
- Count 21:Deprivation of rights under color of law.

Federal and New york state laws prohibit any conspiracy to interfere with civil rights of another persoon. these laws further prohibit the deprivation of rights under color of any law. During my time in detention at the MCC of New York,Warden E.tatum, Assistant warden Jane Doe, Lieutenant Gonzalez, OIC Scott, Unit team 7 south and correctional off

pain and suffering,for the cost of all medical expenses including but not limited to the cost of medications for ten years,the cost of all needed surgeries,the cost of specialists and generalist consultations for ten years.the cost of all illnesses that derived directly from the attack,the cost of accute and chronic care for ten years and the cost psychologist, physician,psychiatrist consultations and treatment for ten years.

71. In additon plaintiff respectfully request that your Honor awards plaintiff other relief your Honor may deem just and proper including the cost of this action.

### Q. DECLARATORY DECREE.

72. An actual controversy exist between the parties as to whether MCC/warden of the said prison's failure to preseve the video recording of the pre-instaled cameras througho ut the facility violated the equal acces to justice and the Prison Rape Elimination Act commanding zero tolerance policy on sexual violence in prison.Because MCC claims to adhere to the PREA policy and even if PREA does not create a right that can be actionable in court of Law, it nevertheless requires transparancy in sexual allegation and impose a duty on prison to save the video recording of sexual violence so that legal action on sexual assault can be substanciated with video recording evidence.the actual controversicy here is that MCC/ warden concluded that my allegation of sexual assaults were unsubstanciated without looking at the very specifics parts of the recording where I stated that the sexual assaults occured. these specific parts of the recordings are located in the segment of the video recording when I dragged myself under the small desk in the cell and when Saint John grabbed my feet and up to when he inserted his hand under my boxer and before I was shakled. this specific section of the recording is only about 2 minutes in lenght.the other specific section of the video recording is that of the camera in the medical room when I was being tied on the table with chains,Saint John was standing between my feet and gonzalez and Chito Evengeli sta were standing on my right side hand. the medical video recording showing this specific part when Saint John hit me is only about 5 minutes in lenght.because MCC intentionally let the video recordings be automatically delete by system knowing that I have initiate a legal action regarding the sexual assaults.It is anxiomatic that if the pre-instaled cameras had captured me sexual ly assaulting and assaulting and battering a correctional officer or any prison em ployee, such video recording would have been saved automatically to be use in a court of

-28-

law as evidence against me a private person. so too should the video recordings be saved in the same manner so that I may use it in a court of law against Saint John and Gonzalez. Be cause the recording were intentionally left to be delete by the automate system knowing that such Video were needed for the internal investigation and as evidence in the district court. The Warden and his employees at MCC have violated equal acces to video recording and so denied me acces to equal justice. WHEREFORE, I respect fully request that the court issues a DECLARATORY DECREE that:

- The warden and his employees intentionally spoliated cruxial evide nce consisting of pre-instaled camera video recordings.

- such spoliation sole intent was to obstruct justice.

- The warden and his employees violated the equal access to the public evidence under custody of the government

- The warden and his employees interfered with the proper administra tion of justice and further interfered with PREA investigation and misslead the investigator by failing hand held video recording that was made intentionally to misslead the public.

- The warden and his employees obstructed justice.

This ~~cout~~ *Court* has authority to grant declaratory relief pursuant to 28 USCS §§ 2201 and 2202.

**R. INJUNCTIVE RELIEF.**

73. Paragraph 72 above is incorporated as if fully set forth herein.

74. By vertue of MCC/Warden and his employees failure to preserve evidence of the second most violent crime known as sexual assault, and by virtue of violation of law that prohibit obstruction of justice, interference with an investigation, missleading the public, spoliation of the evidence, plaintiff has no other adequate remedy and so respectfully ask the court to enter an order barring and preventing the defendants from introducing into evidence the missleading han held

video camera recording made by staffs on the day of the attack, because the hand held cam
era recording does not show my injuries nor does it show the tortures that were inflicted
to me.the hand held recording does not show when Saint John hit me on my testicles in the
medical room. the hand held camera recording does not show when I dragged myself under the
small desk in the cell where Saint John grabbed me by the feet and tried to pull me out
from under the table and subsequentling gabbed me by my testicles and injured my testicles.
The only cameras that had recorded the entire incidents were the one pre instaled through
out the facility. Wherefore, plaintiff respectfully request that the court issues an injun
ctive relief barring and preventing the defendant from introducing staffs's own made video
recording into evidence because such recording was made with the sole intent to misslead
the court and the public and will only show reduncdents part of the incidents that has noth
ing to do with my injuries.


## IX. PRAYER FOR RELIEF

75. Paragraph 1 through 74 above are incorporated as if fully set forth herein.

76. Ngono andre marie the plaintiff- I pray that your HONOR finds for me the plaintiff
for all group of claims and for all relief sought in this complaint.


## X. CONCLUSION.

77. Paragraph 75 through 76 above are incorporated as if fully set forth herein.

78. As we have seen in the narrative of the incidents's section that is supported by
the evidence that Federal employees intentionally inflicted me injuries and this can be
prove with the medical record of the incidents which indicates that the injuries were in
fact inflicted to me by prison staff. Federal employees at the MCC prison actaully inflic
ted me severe and serious injuries. As a result of wrong doing of these Federal employees
the United states becomes the proper defendant. Since I sustained many injuries that lead

to pain and suffering in the past and that will also lead to pain and suffering in the fu
re, I claim a relief in compensatory money damages in the amount of $5 500 000.00.The com
ensatory money damages when awarded by the court, will first send a strong message to pri
son employees who violate the law that no one is above the law. Second when awarded the m
oney damages will deter employees from wrong doing and promote respect of the law among the
employees who intentionally inflicted me injuries. Third when awarded the money damages
will serve the best interest of justice because every person including a pretrial detainee
has the right to free from the fear of being injured by law enforcement. every person also
has the right to be free from actual injuries inflicted by law enforcement personnel.It
is clear that compensatory money damages is the only remedy avalaible to plaintiff in this
case since punitive damages cannot be awwarded when the UNITED STATES is a defendant as in
this case. WEREFORE,I respectfully ask the court to ward the plaintiff $5500000.00 and any
other award the court may deem necessary,just and proper.

Respectfully submitted
NGONO ANDRE MARIE
PRO SE PLAINTIFF

Ngono

Date: 02-09-2019

-31-

**METROPOLITAN CORRECTIONAL CENTER, NEW YORK
ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES**

**INFORMAL RESOLUTION FORM (BP-8)**

**NOTE TO INMATE:** With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you **MUST** attempt to informally resolve your complaint through your correctional counselor. Additionally, in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner. Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state **ONE** complaint below and list what efforts you have made to resolve your complaint informally.

Date form issued and initials of Corr. Counselor: _Qwl 1-31-17_

**INMATE'S COMMENTS:**

1. Complaint: _On 08/18/2016 around noon time, Lieutenant N-Gonzalez entered my maximum secured cell in the segregation housing unit (SHU) located on 9 South in M.C.C. Gonzalez inflicted me severe injuries on various body part including but not limited to my head, torso, legs, back and arms. Gonzalez also forced to stop his officer who sexually molested me in front of him and under the cameras (cell, medical clinic)._

2. Efforts made by you to informally resolve: _____

_____

_____

3. Names of staff you contacted/Date you contacted the staff: _____

_____

_____

Date returned to Correctional Counselor: _____

_N-Gono Andre. M._          _77264-054_          _1-31-17_
Inmate's Name                    Register Number            Date

**CORRECTIONAL COUNSELOR'S COMMENTS:**

1. Efforts made to informally resolve and staff contacted: _____

_____

_____

Date informally resolved: _____    Counselor Signature: _____

Date BP-229(13) Issued: _____

Unit Manager: _____

**Administrative Remedy No. 891663-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal where you allege on August 18, 2016, staff members at MCC New
York entered your cell and physically assaulted you, inflicting
serious injuries to various body parts. You also claim the
Lieutenant failed to stop an officer from sexually molesting you
during this incident. You request compensation for injuries.

The Warden and Regional Director adequately addressed your
allegations against staff. As indicated, a review by the After
Action Committee found staff acted appropriately regarding this
matter. In addition, no credible evidence was presented to support
your claim of being sexually molested by staff nor do you provide
any specific details regarding this alleged incident. We concur
with the responses provided and find no further review is warranted.

As to your request for compensation, the Administrative Remedy
Program does not ordinarily provide for monetary relief. Your
request for monetary compensation should be pursued through the
appropriate statutorily-mandated procedure to resolve this issue.

Accordingly, your appeal is denied.

_6\|14\|17_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals *AME*

## RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY - PART B

Inmate Name: **Ngono, Andre**
Reg. No. **77244-054**
Administrative Remedy Id.:**891663-F1**

This is in response to your Request for Administrative Remedy dated January 31, 2017, wherein you allege that on August 18, 2016, staff entered your cell in the Special Housing Unit (SHU) and inflicted serious injuries to various body parts. You also allege that the Lieutenant failed to stop another staff member from sexually molesting you. Furthermore, you are requesting monetary compensation

Please be advised that your claims of excessive force are untimely and will not be addressed in this response. However, your claims of sexual assault are not time barred and are addressed below.

A review of your allegation revealed that on August 18, 2016, at approximately 12:48 p.m., you were the subject of a Calculated Use of Force, which was captured on video. Upon completion of the Use of Force, an After Action Committee reviewed the incident to and found it to have been justified. In addition, the After Action Committee review did not identify any discrepancy indicating you were sexually molested as you claim.

Based on the above information, your request for relief is denied.

If you are dissatisfied with this response, you may appeal to the Regional Director, Northeast Region, Federal Bureau of Prisons, Northeast Regional Office, U.S. Customs House - 7th Floor, 2nd & Chestnut Streets, Philadelphia, PA 19106, within 20 calendar days of the date of this response.

3/3/2017
Date

E.L. Tatum, Jr., Warden

## Part B - Response

You appeal the response from the Warden at MCC New York regarding your claim you were assaulted by staff. You also allege staff would not provide you a pen or paper so you can report this incident. You request to this matter to be investigated.

A review of your appeal revealed the Warden adequately addressed your complaint, and correctly advised your allegations have been reviewed by the After Action Committee. All documentation and video evidence was also reviewed by the Northeast Regional Correctional Services Office. You failed to provide any additional information or evidence to this office to review this matter any further. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: April 27, 2017

M. D. CARVAJAL
Regional Director

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | |
|---|---|---|
| Inmate Name: NGONO, ANDRE | | Reg #: 77244-054 |
| Date of Birth: 03/24/1972 | Sex: M Race: BLACK | Facility: NYM |
| Encounter Date: 05/03/2016 09:31 | Provider: Bussanich, A. MD/CD | Unit: G06 |

Injury Assessment - Non-work related encounter performed at Health Services.

**SUBJECTIVE:**

**INJURY 1** **Provider:** Bussanich, A. MD/CD

|  |  |  |  |
|---|---|---|---|
| **Date of Injury:** | 05/03/2016 08:30 | **Date Reported for Treatment:** | 05/03/2016 09:32 |
| **Work Related:** | No | **Work Assignment:** | UNASSG |

**Pain Location:**
**Pain Scale:**   0
**Pain Qualities:**
**Where Did Injury Happen (Be specific as to location):**
  HOUSING UNIT.
**Cause of Injury (Inmate's Statement of how injury occurred):**
  "I TOLD HIM NOT TO SMOKE. HE GRABBED ME AND WE STARTED WRESTLING. I DID NOT HIT HIM AND HE DID NOT HIT ME. HE MISSED WITH HIS PUNCHES
**Symptoms (as reported by inmate):**
  NONE EXCEPT FOR ANXIETY.

**OBJECTIVE:**
**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 05/03/2016 | 09:34 NYM | 98.1 | 36.7 | Oral | Bussanich, A. MD/CD |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 05/03/2016 | 09:35 | 97 | Via Machine | Regular | Bussanich, A. MD/CD |
| 05/03/2016 | 09:35 | 87 | Via Machine | Regular | Bussanich, A. MD/CD |
| 05/03/2016 | 09:34 | 92 | Via Machine | Regular | Bussanich, A. MD/CD |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 05/03/2016 | 09:35 NYM | 163/116 | Left Arm | Sitting | Adult-large | Bussanich, A. MD/CD |
| 05/03/2016 | 09:35 NYM | 148/113 | Right Arm | Sitting | Adult-large | Bussanich, A. MD/CD |
| 05/03/2016 | 09:34 NYM | 150/105 | Left Arm | Sitting | Adult-large | Bussanich, A. MD/CD |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 05/03/2016 | 09:35 NYM | 98 | Room Air | Bussanich, A. MD/CD |
| 05/03/2016 | 09:35 NYM | 99 | Room Air | Bussanich, A. MD/CD |
| 05/03/2016 | 09:34 NYM | 100 | Room Air | Bussanich, A. MD/CD |

**Height:**

| Date | Time | Inches | Cm | Provider |
|---|---|---|---|---|
| 05/03/2016 | 09:46 NYM | 70.0 | 177.8 | Bussanich, A. MD/CD |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|

| <u>Date</u> | <u>Time</u> | <u>Lbs</u> | <u>Kg</u> | <u>Waist Circum.</u> | <u>Provider</u> |
|---|---|---|---|---|---|
| 05/03/2016 | 09:34 NYM | 182.3 | 82.7 | | Bussanich, A. MD/CD |

## Exam:
### General
#### Appearance
Yes: Appears Well
#### Nutrition
Yes: BMI reviewed (enter in comments)
### Eyes
#### General
Yes: PERRLA, Extraocular Movements Intact
#### Fundus Exam
Yes: Grossly Normal Retina
### Pulmonary
#### Auscultation
Yes: Clear to Auscultation
No: Rhonchi, Wheezing
### Cardiovascular
#### Auscultation
Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2
No: S3, S4
### Neurologic
#### Cranial Nerves (CN)
Yes: Within Normal Limits

### Exam Comments
BMI IS 26.2.
NO SKIN LESIONS OR ECCHYMOSIS
GRADE 1-2/6 SYSTOLIC MURMUR LEFT STERNAL BORDER.
UROGENITAL AREA VIA VISUAL INSPECTION REVEALED NO LESIONS.

## ASSESSMENT:

Other place in prison as place of injury/occurrence, Y92148 - Current

## PLAN:

### Disposition:
Follow-up at Sick Call as Needed
Return Immediately if Condition Worsens
Return To Sick Call if Not Improved

### Other:
WE DISCUSSED AT LENGTH HIS ELEVATED BP. HE IS NOT WILLING TO START ANTIHYPERTENISIVES. CCC
DONE CONTEMPORANEOUSLY. NOTE TO FOLLOW.

### Patient Education Topics:

| <u>Date Initiated</u> | <u>Format</u> | <u>Handout/Topic</u> | <u>Provider</u> | <u>Outcome</u> |
|---|---|---|---|---|
| 05/03/2016 | Counseling | Plan of Care | Bussanich, A. | Verbalizes Understanding |

Inmate Name: NGONO, ANDRE
Date of Birth: 03/24/1972
Encounter Date: 05/03/2016 09:31
Sex: M Race: BLACK
Provider: Bussanich, A. MD/CD
Reg #: 77244-054
Facility: NYM
Unit: G06

**Copay Required:** No
**Telephone/Verbal Order:** No

**Cosign Required:** No

Completed by Bussanich, A. MD/CD on 05/03/2016 10:00

| | | | | |
|---|---|---|---|---|
| Inmate Name: NGONO, ANDRE | | | Reg #: | 77244-054 |
| Date of Birth: 03/24/1972 | Sex: M | Race: BLACK | Facility: | NYM |
| Encounter Date: 07/01/2016 10:15 | Provider: | Beaudouin, Robert MD | Unit: | G07 |

Injury Assessment - Non-work related encounter performed at Health Services.

**SUBJECTIVE:**

**INJURY 1**     **Provider:**   Beaudouin, Robert MD

    **Date of Injury:**     07/01/2016 07:30     **Date Reported for Treatment:**     07/01/2016 10:14

    **Work Related:**     No     **Work Assignment:**     UNASSG

    **Pain Location:**

    **Pain Scale:**     0

    **Pain Qualities:**

    **Where Did Injury Happen (Be specific as to location):**

      7 SOUTH , RECREATION CAGE.

    **Cause of Injury (Inmate's Statement of how injury occurred):**

      HE, A YOUNG INMATE, PUNCHED ME ON THE LEFT FOREHEAD. HE HIT ME FIRST. I TOLD HIM NOT TO CHANGE THE TV CHANNEL I WAS WATCHING. WE HAD A FISTFIGHT OVER THAT.

    **Symptoms (as reported by inmate):**

      I DO NOT HAVE A HEADACHE. I AM NOT DIZZY. MY VISION IS FINE. I AM FINE. I DO NOT HAVE ANY INJURIES.

**OBJECTIVE:**

**Pulse:**

| **Date** | **Time** | **Rate Per Minute** | **Location** | **Rhythm** | **Provider** |
|---|---|---|---|---|---|
| 07/01/2016 | 10:18 | 125 | Via Machine | | Beaudouin, Robert MD |

**Respirations:**

| **Date** | **Time** | **Rate Per Minute** | **Provider** |
|---|---|---|---|
| 07/01/2016 | 10:18 NYM | 14 | Beaudouin, Robert MD |

**Blood Pressure:**

| **Date** | **Time** | **Value** | **Location** | **Position** | **Cuff Size** | **Provider** |
|---|---|---|---|---|---|---|
| 07/01/2016 | 10:18 NYM | 137/91 | Left Arm | Standing | | Beaudouin, Robert MD |

**SaO2:**

| **Date** | **Time** | **Value(%)** | **Air** | **Provider** |
|---|---|---|---|---|
| 07/01/2016 | 10:18 NYM | 98 | Room Air | Beaudouin, Robert MD |

**Exam:**

    **General**

      **Affect**

        Yes: Cooperative, Irritable

      **Appearance**

        Yes: Appears Well, Appears Distressed, Alert and Oriented x 3

        No: Dyspneic, Appears in Pain, Writhing in Pain, Pale, Diaphoretic

    **Head**

      **General**

        No: Battle's Sign, Raccoon Eyes

**Exam:**

**Temporal Mandibular Joint**

No: Swelling, Inflammation, Tenderness, Non-tender on Palpation, Trauma, Uneven Bite

**Eyes**

**General**

Yes: PERRLA, Extraocular Movements Intact

**Conjunctiva and Sclera**

No: Subconjunctival Hemorrhage

**Ears**

**External Ear**

Yes: Within Normal Limits

**Nose**

**General**

No: Deformity

**Face**

**General**

No: Ecchymosis, Periorbital Edema, Deformity

**Sinus/Maxilla**

Yes: Within Normal Limits

**Mandible**

Yes: Normal Range of Motion

No: Swelling, Deformity

**Lips**

**General**

Yes: Within Normal Limits

**Mouth**

**General**

Yes: Within Normal Limits

**Teeth**

No: Fractured Tooth/Teeth, Avulsion

**Tongue**

Yes: Within Normal Limits

**Musculoskeletal**

**Wrist/Hand/Fingers**

Yes: Normal Bony Landmarks

**Gait**

Yes: Normal Gait

**Neurologic**

**Cranial Nerves (CN)**

Yes: Within Normal Limits

**Motor System-General**

Yes: Normal Exam

**Exam Comments**

HEAD: + MILD EDEMATOUS  AND TENDER AREA OF  ABOUT 2X 2 CM ON LEFT FOREHEAD, OTHERWISE ATRAUMATIC.
LEFT KNEE -LATERAL ASPECT: +  0.3 X 0.2  CM SUPERFICAL ABRASION.
RIGHT KNEE- MEDIAL ASPECT : + 0.3 X 0.3 CM SUPERFICIAL ABRASION.
SKIN EXAM IS OTHERWISE INTACT.

## ASSESSMENT:

Other disorder of the skin and subcutaneous tissue, L988 - Current

## PLAN:

**New Radiology Request Orders:**

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| General Radiology-Skull-General | One Time | | 07/05/2016 | Routine |

**Specific reason(s) for request (Complaints and findings):**

44 YR OLD MALE WITH MILD SWELLING OVER LEFT FOREHEAD FROM  BEING PUNCHED IN A FIGHT WITH ANOTHER INMATE. PLEASE PERFORM SKULL XRAY.

## Disposition:

Follow-up at Sick Call as Needed

## Other:

SKIN ABRASION WAS CLEANED WITH WATER AND BETADINE.
PT'S TDaP VACCINATION IS CURRENT.
PT'S PULSE WAS ELEVATED POST ALTERCATION.
PATIENT ADVISED TO INFORM HSU VIA THE UNIT OFFICER OR WHEN THE MLP DOES SHU ROUNDS IF HE
DEVELOPS HEADACHE, DIZZINESS, DIPLOPIA, FACIAL PAIN, OR ANY NEW SYMPTOMS.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 07/01/2016 | Counseling | Diagnosis | Beaudouin, Robert | Verbalizes Understanding |
| 07/01/2016 | Counseling | Safety/Injury Prevention | Beaudouin, Robert | Verbalizes Understanding |

**Copay Required:** No           **Cosign Required:** No

**Telephone/Verbal Order:**   No

Completed by Beaudouin, Robert MD on 07/01/2016 10:47

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | |
|---|---|---|
| Inmate Name: NGONO, ANDRE | | Reg #: 77244-054 |
| Date of Birth: 03/24/1972 | Sex: M Race: BLACK | Facility: NYM |
| Encounter Date: 07/20/2016 10:00 | Provider: Joaquin, Y. MLP | Unit: Z03 |

Injury Assessment - Non-work related encounter performed at Special Housing Unit.

**SUBJECTIVE:**

**INJURY 1       Provider:    Joaquin, Y. MLP**

    **Date of Injury:**    07/20/2016 09:46        **Date Reported for Treatment:**    07/20/2016 10:10

    **Work Related:**    No        **Work Assignment:**    UNASSG

    **Pain Location:**    Knee-Left

    **Pain Scale:**    5

    **Pain Qualities:**  Dull

    **Where Did Injury Happen (Be specific as to location):**

        Special housing unit Holding cell

    **Cause of Injury (Inmate's Statement of how injury occurred):**

        Inmate was combative and angry. Stated "I have an injury".

    **Symptoms (as reported by inmate):**

        Left knee pain.

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 07/20/2016 | 10:31 NYM | 97.2 | 36.2 | Oral | Joaquin, Y. MLP |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 07/20/2016 | 10:31 | 103 | Via Machine | Regular | Joaquin, Y. MLP |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 07/20/2016 | 10:31 NYM | 146/96 | Right Arm | Sitting | Adult-regular | Joaquin, Y. MLP |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 07/20/2016 | 10:31 NYM | 100 | Room Air | Joaquin, Y. MLP |

**Exam:**

    **General**

        **Affect**

            Yes: Cooperative, Irritable

    **Exam Comments**

    Inmate was on the floor in the holding cell secured by staff. Questioned inmate Ngono about injuries He stated "I have an injury. He was combative, angry and trying to get up from the floor.

    Later on inmate became cooperative and allow medical assessment for injuries.

    He has a bruise/abrasion on left knee. No deformities, no tenderness to the palpation. no lacerations, no hematomas. Inmate has good range of motion on his left knee. Ambulates without any difficulties.

    Area cleaned with sterile saline solution and betadine. Sterile large Band-Aid applied.

**ASSESSMENT:**

    Superficial injury of knee, S80919S - Current

| Inmate Name: | NGONO, ANDRE | | | Reg #: | 77244-054 |
|---|---|---|---|---|---|
| Date of Birth: | 03/24/1972 | Sex: | M  Race:  BLACK | Facility: | NYM |
| Encounter Date: | 07/20/2016 10:00 | Provider: | Joaquin, Y. MLP | Unit: | Z03 |

## PLAN:

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Ibuprofen Tablet | 07/20/2016 10:00 | 600 mg Orally  -  three times a day x 3 day(s) -- As needed for left knee pain. Take it with food. |

**Indication:** Superficial injury of knee

**Disposition:**

Follow-up at Sick Call as Needed

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 07/20/2016 | Counseling | Access to Care | Joaquin, Y. | Verbalizes Understanding |
| 07/20/2016 | Counseling | Hand & Respiratory Hygiene | Joaquin, Y. | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** Yes

**Telephone/Verbal Order:**   No

Completed by Joaquin, Y. MLP on 07/20/2016 10:47
Requested to be cosigned by  Beaudouin, Robert MD.
Cosign documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: NGONO, ANDRE | | | Reg #: 77244-054 |
| Date of Birth: 03/24/1972 | Sex: M | Race: BLACK | Facility: NYM |
| Encounter Date: 08/18/2016 13:47 | Provider: Evangelista, C. MLP | | Unit: Z03 |

Injury Assessment - Non-work related encounter performed at Health Services.

**SUBJECTIVE:**

**INJURY  1        Provider:** Evangelista, C. MLP

**Date of Injury:** 08/18/2016 12:45        **Date Reported for Treatment:**        08/18/2016 13:47

**Work Related:** No        **Work Assignment:** UNASSG

**Pain Location:**

**Pain Scale:** 0

**Pain Qualities:**

**Where Did Injury Happen (be specific as to location):**

SHU- K tier

**Cause of Injury (Inmate's Statement of how injury occurred):**

Inmate was put in forced cell move for not following orders and refusing to be cuffed. OC was sprayed.

**Symptoms (as reported by inmate):**

Inmate combative and screaming in the process. Tearing with no noted breathing problem after OC was sprayed. Abrasion noted on right foot and left leg. AT this time no other injuries to Inmate was noted.

**OBJECTIVE:**

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 08/18/2016 | 13:56 | 92 | | | Evangelista, C. MLP |

**Blood Pressure:**

| Date | Time | | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|---|
| 08/18/2016 | 13:56 | NYM | 158/88 | | | | Evangelista, C. MLP |

**Exam Comments**

Inmate combative, screaming and refused to cooperate. OC was sprayed and decontaminated in the shower. Tearing and nasal mucosa cleaned on face. Abrasion noted on dorsal portion of right foot( 1-2cm ) and left leg (2-3 cm), cleaned with antiseptic. Vitals done, no noted breathing problem. Inmate was seen a few minutes after the move to give his medications, where inmate was washing himself in his cell and flooding the floor still angry. Will follow up for any further complaints.

**ASSESSMENT:**

Injury, unspecified, T1490 - Current

**PLAN:**

**Disposition:**

Follow-up at Sick Call as Needed
Follow-up in 12-24 Hours

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|

See Amendment

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 08/18/2016 | Counseling | Access to Care | Evangelista, C. | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** Yes

**Telephone/Verbal Order:** No

Completed by Evangelista, C. MLP on 08/18/2016 14:06
Requested to be cosigned by Bussanich, A. MD/CD.
Cosign documentation will be displayed on the following page.



# Bureau of Prisons
# Health Services
# Cosign/Review

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | NGONO, ANDRE | | | Reg #: | 77244-054 |
| Date of Birth: | 03/24/1972 | Sex: | M | Race: | BLACK |
| Encounter Date: | 08/18/2016 13:47 | Provider: | Evangelista, C. MLP | Facility: | NYM |

**Cosigned by Bussanich, A. MD/CD on 08/18/2016 16:13.**

| | | | |
|---|---|---|---|
| Inmate Name: NGONO, ANDRE | | | Reg #: 77244-054 |
| Date of Birth: 03/24/1972 | Sex: M Race: BLACK | | Facility: NYM |
| Encounter Date: 08/18/2016 13:47 | Provider: Evangelista, C. MLP | | Unit: Z03 |

Injury Assessment - Non-work related encounter performed at Health Services.

**SUBJECTIVE:**

**INJURY 1**     **Provider:** Evangelista, C. MLP

    **Date of Injury:**   08/18/2016 12:45     **Date Reported for Treatment:**   08/18/2016 13:47

    **Work Related:**   No     **Work Assignment:**   UNASSG

    **Pain Location:**

    **Pain Scale:**   0

    **Pain Qualities:**

    **Where Did Injury Happen (be specific as to location):**

        SHU- K tier

    **Cause of Injury (Inmate's Statement of how injury occurred):**

        Inmate was put in forced cell move for not following orders and refusing to be cuffed. OC was sprayed.

    **Symptoms (as reported by inmate):**

        Inmate combative and screaming in the process. Tearing with no noted breathing problem after OC was sprayed. Abrasion noted on right foot and left leg. AT this time no other injuries to Inmate was noted.

**OBJECTIVE:**

**Pulse:**

| **Date** | **Time** | **Rate Per Minute** | **Location** | **Rhythm** | **Provider** |
|---|---|---|---|---|---|
| 08/18/2016 | 13:56 | 92 | | | Evangelista, C. MLP |

**Blood Pressure:**

| **Date** | **Time** | **Value** | **Location** | **Position** | **Cuff Size** | **Provider** |
|---|---|---|---|---|---|---|
| 08/18/2016 | 13:56 NYM | 158/88 | | | | Evangelista, C. MLP |

**Exam Comments**

Inmate combative, screaming and refused to cooperate. OC was sprayed and decontaminated in the shower. Tearing and nasal mucosa cleaned on face. Abrasion noted on dorsal portion of right foot( 1-2cm ) and left leg (2-3 cm), cleaned with antiseptic. Vitals done, no noted breathing problem. Inmate was seen a few minutes after the move to give his medications, where inmate was washing himself in his cell and flooding the floor still angry. Will follow up for any further complaints.

**ASSESSMENT:**

    Injury, unspecified, T1490 - Current

**PLAN:**

**Disposition:**

    Follow-up at Sick Call as Needed

    Follow-up in 12- 24 Hours

**Patient Education Topics:**

| **Date Initiated** | **Format** | **Handout/Topic** | **Provider** | **Outcome** |
|---|---|---|---|---|

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 08/18/2016 | Counseling | Access to Care | Evangelista, C. | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** Yes

**Telephone/Verbal Order:** No

Completed by Evangelista, C. MLP on 08/18/2016 14:06
Requested to be cosigned by  Bussanich, A. MD/CD.
Cosign documentation will be displayed on the following page.



| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | NGONO, ANDRE | | | Reg #: | 77244-054 |
| Date of Birth: | 03/24/1972 | Sex: | M | Race: | BLACK |
| Encounter Date: | 08/18/2016 15:32 | Provider: | Evangelista, C. MLP | Facility: | NYM |

**Cosigned by Bussanich, A. MD/CD on 08/18/2016 16:14.**

# Bureau of Prisons
# Psychology Services
# SHU Review

| | | | | | |
|---|---|---|---|---|---|
| **Inmate Name:** | NGONO, ANDRE | | | | **Reg #:** 77244-054 |
| **Date of Birth:** | 03/24/1972 | **Sex:** | M | **Facility** NYM | **Unit Team:** 7 |
| **Date:** | 08/18/2016 07:58 | **Provider:** | Schlessinger, K. PsyD/PhD | | |

| | | | |
|---|---|---|---|
| **Placed in SHU:** | 07/01/2016 | **Type:** | SHU |
| **Status:** | ADMIN.DETENTION | **Threat to Self:** | Low |
| **Basis of Review:** | Inmate was interviewed | **Adjustment:** | Satisfactory, segregation not detrimental |
| **Mental Status:** | No significant mental health issues. | **Threat to Others:** | Low |

### Comments

Monthly SHU Review Note

Note: This SHU review is a brief evaluation of this inmate's current mental status in SHU. Although an inmate may exhibit adequate adjustment to his SHU confinement and a lack of acute distress at this current time, it does not preclude the fact s/he may suffer from a psychological disorder requiring additional psychological services. This SHU review is also not a risk assessment of an inmate's potential for violent behaviors. Rather, it is an assessment of whether the inmate exhibits any aggressive or violent behaviors at the time of the SHU review.

Subjective/Objective data: Inmate displayed no evidence of depression or suicidality and appeared to be adequately adjusting to SHU placement. This adjustment was determined by clinical presentation, his self report and Unit personnel statements.

Assessment/Plan: Inmate is currently psychologically stable. He has been instructed to contact Psychology Department staff for support should he request, or be in need of mental health services. Unit staff are aware of the referral process. Inmate will be seen on an as needed basis or monthly for SHU reviews.

Completed by Schlessinger, K. PsyD/PhD on 08/18/2016 09:27

# Bureau of Prisons
# Psychology Services
# Disruptive Behavior Intervention

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Inmate Name: | NGONO, ANDRE | | | | | Reg #: | 77244-054 |
| Date of Birth: | 03/24/1972 | Sex: | M | Facility: | NYM | Unit Team: | 7 |
| Date: | 08/18/2016 13:36 | Provider: | Imeri, Darlene PsyD | | | | |

## Comments

This writer was contacted at about 12:10 PM to engage in confrontation avoidance with Mr. Ngono to have him submit to restraints for a cell rotation. When this writer initially saw Mr. Ngono, he uncovered his window on the cell door and asked this writer what type of Psychology does this writer practice. He stated the only type that works in prison is Skinner. He stated behavioral interventions only work. He stated he is not going to come out of his cell and will have to be forced. He stated that he is ready for staff and showed this writer the soapy water on the cell floor. He said he will hurt staff if they hurt him. He stated he was forced to come to prison and they will have to force him to leave his cell.

He did not want to answer psychological history questions. His PSIQ that he completed on 3/07/16 was reviewed and he denied any mental health history, any past suicidal thoughts or attempts, and any substance abuse. His BEMR intake when he first arrived was also reviewed and during that interview he denied any mental health history and any past suicide attempts.

Current Mental Status: When being interviewed by this writer he was pleasant and exhibited a neutral mood with a mildly restricted range of affect. His speech was logical and coherent, with no loosening of associations or tangential, circumstantial or irrelevant speech. Auditory and visual hallucinations were not reported, and delusions were not elicited. He denied current suicidal ideation. He was future oriented. He does not appear to be an immediate danger to self. He denied thoughts of hurting others unless someone hurts him.

During confrontation avoidance at about 12:48 PM, he acknowledged this writer and stated he already had a conversation with this writer. He did not uncover the window on his cell door this time and he refused to submit to restraints for the cell rotation. Confrontation Avoidance was unsuccessful.

During the use of force, Mr. Ngono was combative, was screaming, and was refusing to cooperate.

He was educated about both routine and emergency procedures for contacting Psychology staff. No follow up is needed at this time. However, he was encouraged to self-refer to Psychology if needed. If he remains in SHU, he will be seen by Psychology in SHU Rounds and in SHU Reviews.

Completed by Imeri, Darlene PsyD on 08/18/2016 15:51

# Bureau of Prisons
## Psychology Services
## Disruptive Behavior Intervention

| Inmate Name: | NGONO, ANDRE | | | | Reg #: | 77244-054 |
|---|---|---|---|---|---|---|
| Date of Birth: | 03/24/1972 | Sex: | M | Facility: NYM | Unit Team: | 7 |
| Date: | 08/19/2016 07:53 | Provider: | Imeri, Darlene PsyD | | | |

## Comments

(Note from 8/18/16)

This note was entered as a referral yesterday, but should have been entered as a "Disruptive Behavior Intervention" note.

This writer was contacted at about 3:00 PM on 8/18/16 to again engage in confrontation avoidance with Mr. Ngono to have him submit to restraints to be taken out of his cell. When this writer saw Mr. Ngono, he stated that we already had a conversation earlier and that he did not ask for Psychology. He again stated he is not going to come out of his cell and will have to be forced. When asked if he was trying to get himself hurt, he stated he was not. During the interview when asked about his case, he stated he has not done his Pre-Sentence Investigation yet, but stated he may be sentenced to 10 to 20 years in prison. He stated he is self-sufficient.

He was pleasant and respectful toward this writer but he said he is not going to submit to restraints. He stated to tell them to come and get him. A few minutes later SHU Officer Scott spoke to Mr. Ngono and Mr. Ngono agreed to submit to restraints to see Medical.

Current Mental Status: He was pleasant and smiled during the interview. He exhibited a neutral mood with a full range of affect. His speech was logical and coherent, with no loosening of associations or tangential, circumstantial or irrelevant speech. Auditory and visual hallucinations were not reported, and delusions were not elicited. He denied current suicidal ideation. He was future oriented. He does not appear to be an immediate danger to self. He denied thoughts of hurting others unless someone hurts him

He was again educated about both routine and emergency procedures for contacting Psychology staff. No follow up is needed at this time. However, he was encouraged to self-refer to Psychology if needed. If he remains in SHU, he will be seen by Psychology in SHU Rounds and in SHU Reviews.

Completed by Imeri, Darlene PsyD on 08/19/2016 08:36

# Bureau of Prisons
# Psychology Services
## Sexual Abuse Intervention

| Inmate Name: | NGONO, ANDRE | | | | Reg #: | 77244-054 |
|---|---|---|---|---|---|---|
| Date of Birth: | 03/24/1972 | Sex: | M | Facility: BRO | Unit Team: | G |
| Date: | 09/06/2017 11:45 | Provider: | McCabe, Joseph PhD | | | |

## Comments

As per Program Statement 5324.12 and the Institutional Supplement on Sexually Abusive Behavior Prevention and Intervention, all allegations of Sexual Abuse/Assault will be promptly and effectively reported and investigated.

Date/Time of Incident: 08/21/2016 (approximately)

Date/Time Psychology Aware: 09/06/2017 at approximately 0830

Date/Time of Intervention: 09/06/2017 at approximately 930

Inmate NGONO is a 45 year old African American male on Holdover status.

During today's interview, inmate NGONO reported the following:
Approximately one year ago while incarcerated at MCC Manhattan, inmate NGONO reported that he was the victim of sexual assault by staff. Per his report, he was celled with an inmate who was smoking K2 which resulted in a physical altercation as inmate NGONO did not approve of smoking in his cell. While in SHU, inmate NGONO did not perceive that his "minimum care" needs were being met. He reported engaging in a verbal altercation with one staff member. At this point inmate NGONO reported that he became non-compliant with staff requests "until my needs were met." On approximately 08/21/2016, he was ordered to submit to restraints which he refused. A DCT team was used to extract him from the cell and while inmate NGONO was holding on the frame of the desk, he alleges that an officer reached into his boxers and grabbed his testicles until he released his grip of the frame. Inmate NGONO reported experiencing testicular pain for which he states he was brought to health services. He reported later submitting a BP-8 and stated that his complaint has been forwarded to "Washington D.C. office for investigation."

Inmate NGONO was offered victim advocacy services. He stated that he was not interested in an external or internal victim advocate at this time. He was provided with the phone number for the toll-free national sexual assault hotline. He was offered individual counseling through Psychology Services but declined the need for services at this time. He was informed of ways to seek assistance if need and agreed to do so if matters changed for him.

Inmate NGONO denied having safety concerns during this interview. His mental status was examined and was determined to be nominal at the time of this interview. He denied any suicidal or homicidal ideation at this time. He will continue to be seen in accordance with Psychology Service's policy.

Findings/Recommendation:
1. At the time of this report inmate denies imminent risk of sexual assault or physical harm.
2. Notifications have been made to Operations Lieutenant.
3. Psychology Services follow-up was not requested nor is required at this time. He was advised how to request additional services as needed/desired both during standard and off-duty working hours.
4. For the next 90 days, or longer if deemed necessary, the inmate will be monitored to ensure there is no retaliation.

Completed by McCabe, Joseph PhD on 09/06/2017 11:51

**Reviewed by Segal, Michael PsyD/Chief Psychologist on 09/12/2017 09:08**

# Bureau of Prisons
# Psychology Services
# Intake Screening

| | | | | |
|---|---|---|---|---|
| Inmate Name: | NGONO, ANDRE | | | Reg #: 77244-054 |
| Date of Birth: | 03/24/1972 | Sex: M | Facility: BRO | Unit Team: G |
| Date: | 09/06/2017 11:50 | Provider: McCabe, Joseph PhD | | |

**Limits of Confidentiality**
Limits of confidentiality were reviewed with inmate NGONO. He expressed an understanding of the limits of confidentiality and consented to be interviewed accordingly.

**Data Source(s)**
The following data sources were reviewed in conjunction with this Initial Intake Evaluation: Self-Report, SENTRY, Other.
Inmate NGONO was seen after indicating that he had been a victim of sexual assault while incarcerated.

**Mental Health History and Current Symptoms**

No history of mental health issues was noted.

No history of prior mental health treatment was noted.

No current mental health symptoms were noted.

No suicidal ideation, attempts, or self-harm were noted.

**Substance Abuse**

No history of substance abuse was noted.

No history of substance abuse treatment was noted.

**Sex Offenses**

No sexual offense convictions were noted.

No history of sexual predation in a correctional setting was noted.

**Relevant Psychosocial History**

Noteworthy psychosocial issues: History of Sexual Victimization.
Inmate NGONO reported that he was the victim of sexual assault while incarcerated at a prior facility. Per his report, an officer grabbed his testicles during a cell extraction while he was housed in SHU. Please refer to his sexual abuse intervention note dated 09/06/2017 for further details.

**Adjustment to Incarceration**

No adjustment to incarceration concerns.

**Findings**

Care Level: CARE1-MH
Inmate NGONO's current mental health care level will be Care1-MH. He does not exhibit any current symptoms that would require an assignment of Care2-MH. This care level may always be re-examined at any time. He will continue to be seen, at a minimum, in accordance with the Treatment and Care of Inmates with Mental Illness policy. He was advised how to contact Psychology Services should he require assistance in the future.

**Recommendations**

The following psychological services are recommended: Follow-Up Appointment.
Inmate NGONO was offered the toll free phone number to the national sexual assault hotline and follow-up from Psychology Services to address his reported history of sexual victimization while incarcerated. He declined this recommendation at the time of this intake screening. He was informed how to contact the psychology department should he require services at a later point in time.

Completed by McCabe, Joseph PhD on 09/06/2017 11:57

**Reviewed by Segal, Michael PsyD/Chief Psychologist on 09/11/2017 14:54**